**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| CRAIG WATERS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:15-cv-01655 |
| LOGISTICS MANAGEMENT INSTITUTE, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment.

Logistics Management Institute ("Defendant") is a 501(c)(3) consulting firm that is dedicated to improving the management of government. The firm employs around 1,200 employees, who are all specialists with diverse backgrounds in government, defense, business, industry, and academia.

In October 1988, Defendant hired Craig Waters ("Plaintiff") as a Research Fellow, and Plaintiff remained in that position for about ten years. In 1998, Plaintiff moved to the Corporate Information Systems (CIS) department where he was promoted to the position of supervisor of CIS's Applications Development group. As the group supervisor, Plaintiff was responsible for

directing, supervising, leading, organizing, and controlling the activities of the programmers in his group. Plaintiff did not embrace his role as a supervisor. This fact was evidenced in Plaintiff's year-end performance reviews. Plaintiff's work was supervised by Robert Bertha, the previous director of CIS. While Plaintiff and Bertha had a good relationship, Bertha noted that Plaintiff failed to supervise the programmers in his group and to complete projects on time.

In May 2013, Lori Becker became Defendant's Chief Financial Officer ("CFO"). As the CFO, Becker was responsible for CIS. She believed that CIS needed improvement, so she hired G2FS, an IT consulting firm, to evaluate the CIS department. G2FS concluded that CIS was not operating efficiently. This led Becker to hire William Brydges, who replaced Robert Bertha. As the new director of CIS, Brydges was responsible for re-organizing the department to run efficiently in meeting Defendant's needs. Brydges evaluated every department in CIS, including Infrastructure, Information Security, Applications Development, and the Help Desk. He met with CIS employees, including Plaintiff. Brydges also met with leaders in other departments. Like the consulting firm hired to evaluate CIS, Brydges also concluded that CIS was not operating efficiently because of its structure.

During his evaluation of CIS, Brydges concluded that CIS would operate more effectively if the Applications Development

group did not build and maintain custom business applications because that process caused unnecessary delays and could be replaced by purchasing existing software. Brydges believed that CIS needed employees who could serve as business consultants and project managers to work with internal clients and meet their needs using software that was already available. When Brydges discussed his plans with Plaintiff, he felt that Plaintiff did not understand the strategy Brydges sought to implement.

In the course of his study on the effectiveness of CIS, Brydges also noticed that Plaintiff did not perform supervisory duties or actually lead the Applications Development group. He found that Plaintiff was essentially a fourth programmer, one who received around 20% more pay than the other programmers in the group. But, unlike the other CIS employees, Plaintiff did not seem to be proactive in fulfilling Defendant's mission. Brydges developed concerns about Plaintiff's work ethic, and Brydges was not alone in his impression of Plaintiff. At least three other executives at the firm had expressed concerns about Plaintiff's performance and responsiveness to internal needs. As part of restructuring CIS, Brydges decided to cut the supervisor position in the Applications Development group. On January 16, 2015, Brydges terminated Plaintiff's employment with Defendant. Plaintiff was fifty-two years old at the time.

Plaintiff filed his complaint against Defendant in federal court on December 15, 2015. He amended his complaint on August 3, 2016. Plaintiff argues that his termination violated the Age Discrimination in Employment Act (ADEA) for two reasons: (1) his termination constituted unlawful age discrimination, and (2) his termination constituted unlawful retaliation for engaging in protected activity. Plaintiff relies on the following facts in particular to support his assertions.

First, Plaintiff relies on a statement made by Defendant's CEO Nelson Ford, who during the July 2014 Town Hall meeting said that "people with gray hair are probably not the future" of the firm and that it was refreshing to speak with the firm's younger employees. Ford later apologized for his "clumsy" remarks, saying that he only intended his words to be understood in reference to succession planning. Plaintiff asserts that he and other employees were offended by these "ageist" remarks.

Second, Plaintiff relies on the fact that Defendant decided to reduce benefits such as retirement contributions and annual leave accrual for employees with over fifteen years of service. Plaintiff does admit that there is nothing age related in this reduction of benefits because it is based on tenure, not age.

Third, Plaintiff relies on the fact that Defendant replaced Robert Bertha with William Brydges in circumstances suggesting that Bertha did not voluntarily resign from his position as

director of CIS. When he resigned, Bertha was sixty years old. Plaintiff indicated that he expressed concerns to Lori Becker about his own job security after Bertha's resignation.

Fourth, Plaintiff relies on the fact that he was the only CIS employee to engage in what he alleges was protected activity when he spoke with Becker about his job security, and he was the only employee terminated in the restructuring. Plaintiff further alleges that Brydges had concluded that both Plaintiff and Kevin Miller were overcompensated for their skill sets, yet only Plaintiff was terminated.

On September 28, 2016, Defendant moved for summary judgment on all counts, which includes Count One (Age Discrimination) and Count Two (Retaliation). On October 28, 2016, the Court heard oral argument on Defendant's motion for summary judgment.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of

material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Under the ADEA, an employer may not discharge an employee who is at least 40 years old "because of" that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). While a plaintiff can prove age discrimination through direct evidence, such direct evidence is often unavailable. Without direct evidence of discrimination, a plaintiff must rely on the *McDonnell Douglas* burden-shifting framework. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (applying the McDonnell Douglas framework to ADEA claim).

There are three phases in the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case; (2) if plaintiff presents a prima facie case, then the Defendant has the burden to show a legitimate, non-discriminatory reason for the adverse employment action; and (3) then the burden shifts to the plaintiff to prove that the reason given by the Defendant is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Plaintiff cannot establish a prima facie case of unlawful age discrimination. To establish a prima facie case, a plaintiff must prove that: (1) he is over 40; (2) he suffered an adverse employment action; (3) he was satisfactorily performing his job duties; and (4) he was replaced by someone "substantially younger" or his position remained open. See Baqir v. Principi,

434 F.3d 733, 742 (4th Cir. 2006); Nelson v. Green Ford, Inc., 788 F.2d 205, 207 (4th Cir. 1986). The first two elements are undisputed: Plaintiff is over 40, and his termination was an adverse employment action. But Plaintiff cannot prove that last two elements.

First, Plaintiff was not performing his job duties to Defendant's satisfaction. Plaintiff, who was employed as the Supervisor of the Application Development group, received poor performance reviews for many years concerning his work as a supervisor. In his deposition, Plaintiff even admitted that being a supervisor was not his main concern. Both of Plaintiff's supervisors, Robert Bertha and William Brydges, agreed that Plaintiff did not prioritize his supervisory responsibilities.

Second, Defendant has not replaced Plaintiff with a "substantially younger" employee because the supervisor position was eliminated in the reorganization. Even now, more than twenty months later, Defendant still has not hired another supervisor for the Applications Development group or filled Plaintiff's position with another employee. Plaintiff argues that he meets this element because his work was redistributed to younger employees within his section, and Defendant has posted a job position involving some of the work that Plaintiff previously performed.

Defendant did not violate the ADEA by restructuring its organization and redistributing the work to other employees. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) ("[T]he fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias."); see also Blizzard v. Marion Tech. Coll., 698 F.3d 275, 283-84 (6th Cir. 2012) ("[A]n employee's assumption of a terminated co-worker's job duties does not constitute replacement for purposes of an ADEA claim."); Yates v. Rexton, Inc., 267 F.3d 793, 799 (8th Cir. 2001) (same). For these reasons, Plaintiff cannot establish a prima facie case of age discrimination in violation of the ADEA.

Even if Plaintiff could establish a prima facie case of age discrimination, Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff. As the Fourth Circuit held in E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992), a company is able to make business decisions, including the decision to reorganize its workforce, without violating the ADEA. Absent proof of an ADEA violation, it is not the role of the court to second-guess a business decision. Id.

In Brown v. Maryland-Nat'l Capital Park, Planning Comm'n, 162 F.3d 1154 (4th Cir. 1998), the Fourth Circuit held that reorganizing and restructuring management responsibilities is a legitimate, non-discriminatory business decision and the company

did not violate the ADEA by terminating a management position to "conserve resources and create a more efficient" company. See also Perry v. Computer Scis. Corp., No. 1:10-CV-00175, 2010 WL 3784900, at *8 (E.D. Va. Sept. 21, 2010), aff'd, 429 F. App'x 218 (4th Cir. 2011) (holding that a company did not violate the ADEA when it terminated an employee after a reorganization of its workforce).

Like the companies in Brown and Perry, Defendant had a valid, non-discriminatory reason for the adverse employment action taken against Plaintiff. Defendant hired a consulting firm, G2FS, to evaluate the efficiency of the CIS department. G2FS found that the Application Development group was not operating with a high level of efficiency. G2FS's study was confirmed by Brydges's internal evaluation of the group. As a result, Brydges decided to restructure. In the restructuring, Plaintiff lost his position. That is a business decision that Defendant can make without this Court second-guessing the decision. In his deposition, Plaintiff even acknowledged that Brydge's reason for terminating the supervisor position was to reorganize the firm and that Defendant can make business decisions without violating the ADEA.

Finally, Defendant's reason for terminating Plaintiff's position is not pretextual. Plaintiff relies on Nelson Ford's gray hairs remark from the July 2014 Town Hall, which occurred

seven months prior to Plaintiff's termination, to argue that the Defendant's stated reason of reorganization is pretextual. But the Fourth Circuit has repeatedly held that statements such as Ford's are not evidence of age discrimination. Birkbeck, 30 F.3d at 511 (holding that the statement "there comes a time when we have to make way for younger people" was not evidence of discriminatory purpose); Smith v. Flax, 618 F.2d 1062, 1066 (4th Cir. 1980) (holding that it did not indicate a discriminatory purpose to state that "the Division's future lay in its young Ph.D's . . . ."). Statements such as these are especially innocuous when remote in time from the adverse employment action or isolated in occurrence.

Here, Plaintiff relies on a single, isolated incident which was remote from the adverse employment action. The gray hairs remark in context read: "[p]eople with gray hair are probably not the future . . . we've gotta think about how we're going to continue to make sure that this organization is as strong 50 years from now as it is today." Ford's statement read in context is evidence of succession planning. As the Fourth Circuit held in Birkbeck and Smith, these statements do not indicate a discriminatory purpose.

The Court now turns to Plaintiff's retaliation claim. The ADEA prohibits an employer from retaliating against an employee for engaging in protected activity such as opposing any practice

made unlawful by the ADEA. 29 U.S.C. § 623(d). In the absence of direct evidence, the *McDonnell Douglas* burden-shifting analysis applies. To establish a prima facie case of retaliation, the plaintiff must prove that: (1) he engaged in protected activity, (2) an adverse action was taken against him, and (3) there was a causal link between the two events. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). Plaintiff cannot prove the first or last element.

First, Plaintiff fails to show that he engaged in protected activity. While "protected activity" can include an informal complaint, see Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998), the employee must clearly oppose discriminatory conduct. Burgess v. Bowen, 466 F. App'x 272, 282 (4th Cir. 2012). A complaint, whether formal or informal, should put the employer on notice that the employee is opposing conduct prohibited by the ADEA. See id.

Here, Plaintiff admitted in his deposition that he never actually complained of age discrimination to anyone in HR. Instead, Plaintiff argues that he engaged in protected activity on two occasions: once while in a discussion with Lori Becker, and once while in a discussion with Bill Brydges. In his meeting with Becker, Plaintiff raised concerns about his job security following the resignation of his long-time supervisor, Robert Bertha. While meeting with Brydges, Plaintiff noted his concerns

with the "preferential treatment of more junior staff." Neither of these discussions qualifies as protected activity.

The conversation with Becker fails to qualify as protected activity because merely expressing concern about one's own job security does not put an employer on notice of opposition to discriminatory conduct. Furthermore, Plaintiff fails to show how Defendant even engaged in unlawful conduct during Bob Bertha's resignation. Likewise, the conversation with Brydges also fails to qualify as protected activity because Plaintiff merely reiterated his concern about his own job security. Without any additional evidence that Plaintiff complained of discriminatory practices, these conversations alone failed to put Defendant on notice that Plaintiff was engaging in protected activity.

Second, Plaintiff cannot prove a causal link between his attempt to engage in protected activity and his termination. To prove causation, a plaintiff must show that the employer knew the employee engaged in protected activity and that the activity led to the adverse employment action. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the [causation] element of the prima facie case."). If an employee has not engaged in protected

activity, then it is impossible for the non-existent protected activity to cause the adverse employment action. As explained earlier, Plaintiff did not engage in protected activity because he never complained of age discrimination to HR and he did not place Defendant on notice during his employment with Defendant that he considered any of Defendant's practices to violate the ADEA. Thus, Plaintiff has not established the causation element of a prima facie case.

Finally, even if Plaintiff could establish a prima facie case of retaliation, Defendant still had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. CIS was not operating efficiently, so Defendant reorganized the department. As explained above, restructuring qualifies as a legitimate business decision that an employer can make without violating the ADEA, and it is not the province of the court to second-guess that decision. This shifts the burden back to Plaintiff to prove that the reason for his termination was pretextual, and Plaintiff has failed to establish that this reason is pretextual.

For the foregoing reasons, this Court finds that summary judgment should be GRANTED in favor of the Defendant on both counts. An appropriate order shall issue.

Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 10, 2016